UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JONATHAN LATTIMORE,<br><br>    Defendant. | Criminal Action No. 20-123 (TFH) |

## MEMORANDUM OPINION

At issue is whether the Constitution permits the Court to hold a suppression hearing by remote video conference. As explained during the status conference held on February 12, 2021 and discussed more fully herein, the Constitution does not entitle a defendant to an in-person suppression hearing and certainly does not forbid conducting a suppression hearing by video conference.

I. **Background**

In April 2020, Defendant Jonathan Lattimore was arrested and charged with several narcotics and firearms offenses. He has been detained pending trial. In the course of pre-trial proceedings, Mr. Lattimore filed a Motion to Suppress asserting that arresting officers violated the Fourth Amendment when they seized his backpack without probable cause. Mot. to Suppress at 2 [ECF No. 15]. The government has opposed the motion, arguing that officers had the requisite reasonable suspicion to stop and frisk the defendant. Opp'n to Mot. to Suppress at 3 [ECF No. 16].

Due to the Coronavirus pandemic, and in accordance with Chief Judge Howell's Standing Order 20-17, applicable law, and guidance from local and federal health officials, this Court has conducted all hearings since March 17, 2020, including suppression hearings, by video or teleconferencing. This Court has not, however, proceeded with a remote hearing in the absence of a defendant's consent.

Mr. Lattimore has not consented to a remote hearing and instead seeks an immediate in-person hearing, claiming a constitutional right to be present at an in-person suppression hearing. Mot. to Continue Suppression Hr'g [ECF No. 17].

**II.     Defendant's Argument**

Mr. Lattimore maintains that conducting a suppression hearing by video would violate his Fifth and Sixth Amendment rights to (1) participate in his own defense and (2) effective assistance of counsel. Mot. to Continue Suppression Hr'g at 1-2. Mr. Lattimore frames the matter as "whether the full panoply of the rights applicable to a criminal defendant in the Bill of Rights requires an in-person suppression hearing." *Id.* at 3-4.

In a short pleading, Mr. Lattimore advances three principal arguments in support of his contention that the Constitution affords him the right to an in-person suppression hearing. First, he states that cross-examination is of critical importance during a suppression hearing. *Id.* at 2. Second, he contends that a video hearing would deprive him of his Sixth Amendment right to effective assistance of counsel because (1) cross-examining by video would greatly reduce counsel's effectiveness and (2) conducting the hearing by video would mean that the defendant and counsel could not consult at any point, including on the decision of whether to testify.  Mot. to Continue Suppression Hr'g at 1; 3-4.  Specifically, Mr. Lattimore contends that counsel would be unable to "to observe as much of the witness's body language or other physical manifestations

2

as she would in the courtroom" and "would not be able to consult with the defendant during the hearing." Mot. to Continue Suppression Hr'g at 1-2. Finally, Lattimore maintains that "conducting the hearing by video would deprive the defendant of the due process right to participate in his own defense" again because he would not be physically present and would be unable to communicate with counsel. Mot. to Continue Suppression Hr'g at 4.

On January 22, 2021 the government filed a brief nominally responding to Mr. Lattimore's constitutional argument. Gov't Response [ECF. No. 20]. The government maintains that holding a remote suppression hearing over a defendant's objection may implicate certain of a defendant's Due Process rights and therefore it "opposes a remote suppression hearing over the defendant's objection." Gov't Response at 3. Specifically, the government states that a defendant "likely has at least some right to presence at hearings involving disputes of fact" and noted that "with respect to suppression hearings the D.C. Circuit has recognized a Due Process right to cross-examination." Gov't Response at 3-4.

### III.   Analysis

To date, it appears just one federal court has addressed the precise issue of whether a fully remote suppression hearing is constitutionally permissible. In a case from the District of New Mexico, *United States v. Rosenschein,* the court concluded in a well-reasoned opinion that holding a suppression hearing by videoconference (as necessitated by the COVID-19 pandemic) did not violate (1) Federal Rule of Criminal Procedure 43; (2) the Confrontation Clause; (3) the Sixth Amendment right to effective assistance of counsel; or (4) defendant's right to due process. 474 F. Supp. 3d 1203 (D.N.M. 2020). In *Rosenchein,* as in this case, the court determined that holding an in-person suppression hearing was not safe due to the pandemic and the defendant objected to holding a remote hearing. Similar to Mr. Lattimore, the defendant in *Rosenchein*

maintained that holding a suppression hearing "via videoconference would violate Rule 43 of the Federal Rules of Criminal Procedure, as well as his constitutional rights to due process, to confront witnesses against him and to effective assistance of counsel." *Id.* at 1206. However, after addressing defendant's contentions, the court concluded that "[t]he suppression hearing to be conducted by videoconference will comport with the Federal Rules of Criminal Procedure, the Constitution, the interests of the Defendant and the public in a timely disposition of the case, and the interest of the public in reducing the spread of COVID-19." *Id.* at 1210.

Also relevant is *United States v. Burke*, a case in which the Sixth Circuit held that: (1) Federal Rule of Criminal Procedure 43 requiring defendant to be physically present at every stage of the trial does not apply to a pre-trial motion to suppress and (2) the use of video-conferencing at a suppression hearing did not violate defendant's due process, fair trial, or confrontation rights. 345 F.3d 416 (6th Cir. 2003). In *Burke,* unlike in *Rosenschein* where all participants were remote, only the presiding Judge appeared by video, the parties and witnesses were together in the court room.[1]

### A. Federal Rule of Criminal Procedure 43

Before turning to the constitutional issues, it is worth discussing whether a defendant might have a right to an in-person suppression hearing under Rule 43 of the Federal Rules of Criminal Procedure. Rule 43 governs a defendant's presence at certain stages of criminal proceedings. The rule provides in relevant part:

> **(a) When Required.** Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at:
> (1) the initial appearance, the initial arraignment, and the plea;

---

[1] In *Burke,* the presiding judge appeared by video because there was a severe shortage of judges in the Western District of Tennessee where the case was being tried and it was arranged that Judge Robert Cleland of the Eastern District of Michigan would hear the case as a visiting judge. Prior to the hearing, however, Judge Cleland notified the parties that he would be presiding over the case from Michigan, participating in the proceedings via videoconference. *Burke,* 345 F.3d at 420.

>(2) every trial stage, including jury impanelment and the return of the verdict; and
>(3) sentencing.

Fed. R. Crim. P. 43.

On its face, the rule does not mandate a defendant's presence at a hearing on any pretrial motions, including a motion to suppress. Indeed, the advisory committee notes to the rule state "this principle does not apply to hearings on motions made prior to or after trial." Advisory Notes to Fed. R. Crim. P. 43.

A number of courts conducting a similar textual analysis have found Rule 43 inapplicable to a variety of pretrial hearings including suppression, Daubert, and motions *in limine*. *See Rosenschein*, F. Supp. 3d at 1207 (noting that "by its plain terms, Rule 43 does not require a defendant's presence at a hearing on a motion to suppress, which does not satisfy any of the types of hearings listed there"); *United States v. Nelson*, No. 17-CR-00533-EMC-1, 2020 WL 3791588, at *1 (N.D. Cal. July 7, 2020) ("neither Rule 43 nor the Constitution mandates a defendant to be physically present" for a *Daubert* hearing); *United States v. Karmue*, 841 F.3d 24, 28 (1st Cir. 2016) (holding it was not clear error under Rule 43 for the district court to conduct the second day of the *Daubert* hearing without the defendant's physical presence); *Burke*, 345 F.3d at 423–24 (noting that "the authorities are nearly unanimous that Rule 43's right to be present does not apply to pre-trial suppression hearings"); *Taylor v. United States*, 385 F.2d 835, 836 (8th Cir. 1967) (per curiam) (no right to be present for a hearing on motions *in limine*);

Accordingly, it seems clear that Rule 43 does not require defendant's presence at a suppression hearing and certainly does not forbid a video hearing.

### A. Confrontation Clause

The Confrontation Clause of the Sixth Amendment provides a possible avenue for a defendant to argue that he has a constitutional right to be present at an in-person suppression

hearing. The Sixth Amendment provides that "in all criminal prosecutions" a defendant be afforded the right "to be confronted with the witnesses against him." At its core, the Confrontation Clause provides "two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)). *See also Crawford v. Washington*, 541 U.S. 36, 50 (2004) ("the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.").

Although the Supreme Court has never definitively ruled on the issue, it has repeatedly signaled that Confrontation Clause is a trial right. *See Barber v. Page*, 390 U.S. 719, 725 (1968) (explaining that "[t]he right to confrontation is basically a trial right."); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 52-53 (1987) (plurality opinion) ("the opinions of this Court show that the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination."); *California v. Green*, 399 U.S. 149, 157 (1970) ("Our own decisions seem to have recognized at an early date that it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"). *But see Kentucky v. Stincer*, 482 U.S. 730, 738, n. 9 (1987) (Blackmun, J.) ("The personal view of the author of this opinion as to the Confrontation Clause is somewhat broader than that of the *Ritchie* plurality.")

More recently, a number of federal Courts of Appeals have endorsed, at least tepidly, the view that the Confrontation Clause is a trial right and therefore does not apply at a suppression hearing. *See United States v. Robinson*, 663 F. App'x 215, 218 (3d Cir. 2016) (unpublished) ("[t]he Supreme Court has never suggested ... that the Confrontation Clause applies during a pre-

trial suppression hearing"); *Ebert v. Gaetz,* 610 F.3d 404, 414 (7th Cir. 2010) (the Confrontation Clause is "not implicated" at a suppression hearing); *United States v. Garcia*, 324 Fed. App'x 705, 708 (10th Cir. 2009) ("There is no binding precedent from the Supreme Court or this court concerning whether *Crawford* applies to pretrial suppression hearings. To the extent that we can divine clues from our case law concerning the resolution of this issue, they do not benefit [the defendant].").

Despite the suggestion of precedent, there are several colorable arguments that the Confrontation Clause does apply at a pre-trial suppression hearing. At the outset, it is worth noting that the original public meaning of the Confrontation Clause is indeterminable. As Justice Harlan observed, "the Confrontation Clause comes to us on faded parchment. History seems to provide little insight into the intended scope of the Sixth Amendment Confrontation Clause." *California v. Green*, 399 U.S. 149, 173–74, (1970) (Harlan, J. concurring); *see also White v. Illinois*, 502 U.S. 346, 359 (1992) (Thomas, J., concurring in part and concurring in the judgment) ("There is virtually no evidence of what the drafters of the Confrontation Clause intended it to mean.").

First, the text of the Sixth Amendment provides some support for the defendant's position. The phrase "in all criminal prosecutions" in the Sixth Amendment is, by its plain text, not exclusively limited to trial proceedings. At the time of the adoption of the Sixth Amendment, determinations of the admissibility of evidence were generally conducted at trial. *See, e.g., Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 437 (1979) (Blackmun, J., concurring in part and dissenting in part) (noting that "the modern suppression hearing, unknown at common law, is a type of objection to evidence such as took place at common law… in *open court* during trial"). Echoing Justice Harlan, a number of legal scholars have observed that Founding Era materials

provide little definitive guidance as to which stages of a modern prosecution might encompasses a "prosecution" within the ambit of the Sixth Amendment.[2] However, as Justice Scalia noted, although "[a]ny attempt to determine the application of a constitutional provision to a phenomenon that did not exist at the time of its adoption…involves some estimation… that is hardly a reason not to make the estimation as accurate as possible." *Crawford* 541 U.S. at 52 n.3.

Today, a suppression hearing is undoubtably a critical part of a criminal prosecution. In many cases, a suppression hearing is the last major pre-trial proceeding, occurring long after indictment and following substantial discovery. The outcome often determines the ultimate result at trial or alternatively dictates whether a defendant accepts a plea deal. *See United States v. Green*, 670 F.2d 1148, 1154 (D.C. Cir. 1981) (noting that "the suppression hearing is a critical stage of the prosecution which affects substantial rights of an accused person; the outcome of the hearing-the suppression vel non of evidence-may often determine the eventual outcome of conviction or acquittal"). If the right to confrontation applies in "all criminal prosecutions," there is certainly a rationale for applying that right to a suppression hearing, which occurs long after a modern prosecution has begun.

As a final note, it is worth considering that the Supreme Court has also never explicitly stated whether the Confrontation Clause applies at sentencings – a proceeding which today is conducted separate from trial but which at the time of the Framing did not exist because

---

[2] A great deal of scholarship has been devoted to discussion of the original understanding of a "prosecution," particularly in regards to sentencings. *See e.g.* Shaakirrah R. Sanders, Unbranding Confrontation As Only A Trial Right, 65 Hastings L.J. 1257, 1262 (2014); Stephanos Bibas, Two Cheers, Not Three, for Sixth Amendment Originalism, 34 Harv. J.L. & Pub. Pol'y 45, 50 (2011); Benjamin C. McMurray, Challenging Untested Facts at Sentencing: The Applicability of Crawford at Sentencing After Booker, 37 McGeorge L. Rev. 589, 616 (2006) (discussing the original understanding of the term prosecution).

punishment was fixed by statute.[3] *See Apprendi v. New Jersey*, 530 U.S. 466, 478-81 (2000). However, the Courts of Appeals to have considered the issue have all held that the Confrontation Clause does not apply at sentencing, thereby somewhat weakening the argument for its application to a suppression hearing. *See United States v. Bras,* 483 F.3d 103, 109 (D.C. Cir. 2007); *United States v. Powell*, 650 F.3d 388, 393 (4th Cir. 2011) (collecting cases).

Second, other enumerated Sixth Amendment rights – the rights to counsel and the right to a public trial – attach to critical pretrial stages in a criminal prosecution. The right to counsel protects the "most basic right as a criminal defendant—his right to a fair trial at which the witnesses against him might be meaningfully cross-examined." *United States* v. *Wade*, 388 U.S. 218, 223-24 (1967). The right to counsel must attach prior to trial because, if it did not, it could not fulfill its "core purpose… to assure 'Assistance' at trial." As explained by the Supreme Court in *Wade*:

> [T]oday's law enforcement machinery involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality. In recognition of these realities of modern criminal prosecution, our cases have construed the Sixth Amendment guarantee to apply to 'critical' stages of the proceedings. The guarantee reads: 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.' (Emphasis supplied.) The plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'

388 U.S. at 224-225.

The Sixth Amendment right to a public trial also attaches before trial – at a suppression hearing. *Waller* v. *Georgia,* 467 U.S. 39, 47 (1984). The public trial right, like the right to

---

[3] Stephanos Bibas, Two Cheers, Not Three, for Sixth Amendment Originalism, 34 Harv. J.L. & Pub. Pol'y 45, 50 (2011) (Eighteenth-century trials contained no sentencing phase); John G. Douglass, Confronting Death: Sixth Amendment Rights at Capital Sentencing, 105 Colum. L. Rev. 1967, 1972 (2005) ("Bifurcation--separating the guilt determination from the choice of an appropriate penalty--was a procedure that evolved after the founding, initially for noncapital sentencing.").

counsel, exists to protect the defendant and ensure a fair trial. The right extends to a pretrial suppression hearing because the rights and equities protected at trial are "no less pressing in a hearing to suppress wrongfully seized evidence." *Id*. at 46. This is due in part to the similarity in both form and importance between trials and suppression hearings. *Id.* at 46-47 ("a suppression hearing often resembles a bench trial: witnesses are sworn and testify, and of course counsel argue their positions. The outcome frequently depends on a resolution of factual matters.")

In order to guarantee the fundamental right to a fair trial, both the right to counsel and the right to a public trial attach well before a jury is sworn. Likewise, the suppression hearing protects the right to a fair trial by ensuring that only lawfully obtained evidence can be introduced. Given the suppression hearing's role in assuring a fair trial (and the integral role of cross-examination at that hearing) there is certainly an argument that the Confrontation Clause should be read, like the structurally identical Counsel Clause and the public trial guarantee, to apply to certain pre-trial hearings.

Here, the defendant concedes that "the few precedents that do exist suggest that the Confrontation Clause does not apply to pretrial hearings." Mot. to Continue Suppression Hr'g 4. at 2. Although the Supreme Court has certainly left the door ajar to competing conclusions, at the current juncture the balance of precedent does not favor the defendant. While the text and construction of the Sixth Amendment provide some support for the conclusion that the Confrontation Clause applies pre-trial, in light of the Supreme Court's indication that the Confrontation Clause is a trial right, this Court, like the other federal courts to recently consider the issue, concludes that the Confrontation Clause does not attach prior to trial.

As a final note, even if the Confrontation Clause applied to a pre-trial suppression hearing, it is not clear that a videoconference would violate a defendant's right to confrontation.

As discussed more fully below, during a video hearing, the defendant will be able to fully participate – he can communicate with counsel and the presiding judge and see and hear witnesses – and his counsel will be able fully examine and cross-examine all witnesses.

### B. Effective Assistance of Counsel

Next, the defendant argues that conducting a remote suppression hearing would violate his right to effective assistance of counsel because (1) he would be unable to consult with counsel and (2) cross-examination by video would greatly reduce counsel's effectiveness. Mot. to Continue at 4; 1-2.

As to Mr. Lattimore's contention that he would be unable to communicate with counsel during a video hearing, the use of so-called breakout rooms or private text chat would obviate any concern that counsel would be unable to consult with her client. There is a legitimate worry that a correctional officer stationed in the room with an incarcerated defendant might be able to overhear private conversations or read private text chats with counsel, however any issue could be eliminated by making provisions for the corrections officer to briefly leave the room or use of a privacy screen so that text chats remained confidential.

Mr. Lattimore's second concern – that a remote hearing would hamstring counsel's ability to conduct a potent cross-examination – does not jeopardize his Sixth Amendment rights. As Learned Hand once observed, witness demeanor is a crucial feature of testimony. *See Dyer v. MacDougall*, 201 F.2d 265, 268–69 (2d Cir. 1952) (noting that "the carriage, behavior, bearing, manner and appearance of a witness—in short, his 'demeanor'—is a part of the evidence.") That said, any diminished effectiveness of counsel attributable to the use of videoconferencing is unlikely to be so great as to implicate the defendant's Sixth Amendment rights. This Court, like every other court in the country, has conducted a great number of video hearings – including

suppression hearings – and has found that by and large counsel is able to see, hear, assess, and examine witnesses in an effective manner. *C.f. Rosenschein*, 474 F. Supp. 3d 1203, 1208 (D.N.M. 2020) (noting that at a remote suppression hearing "the Court will be able see, hear, and speak to the witnesses, counsel, and Defendant, and they will be able to see, hear, and speak to the Court.")

It is perhaps possible, if unlikely, that a video hearing could so greatly diminish counsel's effectiveness as to deny a defendant effective assistance of counsel. Mr. Lattimore, however, offers little legal or factual support for that position and the Court is confident that a video suppression hearing in this matter could be conducted in such a way that Mr. Lattimore receives his constitutional right to effective counsel.

### C. Due Process

Finally, the defendant avers, again with minimal support, that "conducting the hearing by video would deprive the defendant of the due process right to participate in his own defense." Mot. to Continue Hr'g at 4. The defendant's suggestion that he will be unable to participate is, however, not quite right. As mentioned above, at a video hearing, the defendant would, like all other participants, appear onscreen, be able to communicate with the Judge and counsel and see and hear the proceedings. Further, as noted above, the defendant would be able to communicate with his attorney privately using private chat or breakout rooms. To be sure, though much is lost through virtual communication, "the difference between the two is not enough to render the proceeding fundamentally unfair and does not deprive Defendant of due process." *Rosenschein*, 474 F. Supp. 3d at 1209. In sum, there is no reason to think that a video hearing would deprive the defendant of any due process rights.

Moreover, whatever due process rights a defendant may have in being physically present in a courtroom, the right is implicated to a lesser degree in a suppression hearing than in an actual trial. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself."). Although the D.C. Circuit has long recognized that "the suppression hearing is a critical stage of the prosecution which affects substantial rights of an accused person," a suppression hearing is qualitatively different than a trial. *Green*, 670 F.2d at 1154. *See, e.g., McCray v. State of Ill.*, 386 U.S. 300, 307 (1967) (noting differences between the purpose of a trial and a suppression hearing and the different equities implicated).

## **CONCLUSION**

The Court would greatly prefer to hold all pre-trial hearings in person. Particularly given their importance, the Court believes that in all but the most unusual of circumstances, suppression hearings should be conducted in person. Unfortunately, the COVID-19 pandemic simply prevents the Court from holding in-person hearings safely at this time. As of this writing, over half a million Americans have died from COVID-19 and tens of millions have fallen ill. All relevant guidance from public health officials instructs people to refrain from congregating whenever possible to reduce the spread of the virus.[4]

In sum, the Constitution does not mandate that a suppression hearing be conducted in-person and conducting a hearing by remote video conference does not infringe on the defendant's rights. For the foregoing reasons, as well as the reasons set forth on the public record

---

[4] The Court notes that not only have Court employees lost family members to COVID-19, it has lost one of our Judges as well. In person hearings with witness are not to be undertaken lightly.

during the February 12, 2021 hearing, the defendant's motion for an in-person suppression hearing **shall be denied**.

    **An appropriate order accompanies this opinion.**

March 8, 2021

_/s/ Thomas F. Hogan_
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE
